Thank you, Your Honor. Zachary Lopes for appellants. May it please the court, I'd like to reserve three minutes for rebuttal. I thought I'd begin by addressing the court's question sent to the parties a few weeks ago. That question being whether or not the police commission's adoption of a motion to purportedly reject the CPRA's report affects this question is no. The adoption of that motion does not affect this court's analysis for one primary reason. After the commission adopted that motion, the discipline committee thereafter convened in reliance on the CPRA's report, the very report that the commission purportedly rejected. It likely did that because under the charter and the ordinances, the commission does not have the authority to reject CPRA reports or investigative findings. The closest authority the commission has is to direct the CPRA to reopen a closed investigation and direct further investigative act to it. It did not even do that in this case. So in sum, the commission's adoption of that motion was ineffectual and does not affect this court's analysis. Now, in the event this court does find that the commission had the authority to reject the CPRA's report, such a finding would fall in appellant's favor. It would do so because as has been discussed at length in the briefing, under section 604 of the charter, the chief of police's decision is final unless the CPRA disagrees or disputes the chief's findings. If the commission did in fact properly reject the CPRA's findings and report, there would be nothing that stands in dispute with the chief of police's findings. That's the actual chief of police of the Oakland Police Department and not the compliance director. And the chief's findings would be final. Unless there are any more questions on that, I'd like to move to the balance of appellant's arguments. So this case, the primary issue presented by this case is whether or not a California city, such as the may excuse its compliance with the terms of its charter in reliance on conflicting provisions of a settlement agreement. California law provides a clear... Well, it's more than a settlement agreement. I mean, it's embodied in a court order with the force of law. Isn't that correct? That is correct, Your Honor. And under the normal course, district court's orders obviously must be complied with. But this is not a normal district court order. It's an order entered into in a consent decree case. And it's an order that essentially ratified settlement agreement between the city and the Oakland plaintiffs. But the order gave the compliance director specific authority with respect to personnel issues and findings and investigations. So why didn't that give the compliance director effectively the authority to conflict with the CPRA? Because the city's charter supersedes conflicting provisions of that statutory court order. Why do you say that when there's nothing in the change in the city charter that referred back to the settlement or expressly suggested it was superseding it? Why isn't the common sense of it that since the people recognize that the settlement wouldn't go on forever, they wanted to put in place provisions that would go beyond the term of the settlement agreement, not that they wanted to displace it? Sure. So the city's charter did not discuss the NSA or the compliance director's authority because it did not happen. The terms of the city's charter are in effect the local constitution of the city. The California Supreme Court has ruled that the only provisions which may supersede the terms of the city's charter are conflicting federal or state constitutional provisions or preemptive state law. The December 2012 order is none of those sources of conflicting authority. On that basis alone, the district court's order is wrong because it improperly elevated the terms of that order, which in effect implemented a settlement agreement over the terms of the city's charter. But it's a federal court order implementing obligations that arise from federal law in the issues that were resolved in that lawsuit. So why isn't that superseding federal law that trumps any state law that's in the charter? Well, it's not a federal constitutional provision, and that's the only thing that may supersede a city's charter. The other point to that... So a federal statute cannot override a city charter? The city's charter is the local constitution of the city. A federal statute may, in fact, be able to supersede a city charter provision. However, in this case, this December 2012 order is not a federal statute. The US Supreme Court in Local 93 made this claim, and Collins, the decision by this circuit affirms that. The terms of a consent decree, which this December 2012 order is a part of, only have the same force and effect as the party's ability to consent to its terms. The city cannot consent to terms that call for it to ask or act in its charter. So you're saying that if the city enters into a consent decree, which has the force of federal law, then the city can get out of it the next day by changing its charter? Yes, I can. Yes, they can. And the reason is... Doesn't that make a mockery of federal supremacy? No, it does not, because in this case, this is not a case where the court was exercising any federal supremacy powers. It just wasn't. The court was not reviewing the charter for alleged unconstitutionality. The court was not exercising its remedial authority. When the court displaces the authority of the chief of police with a court-appointed officer and gives that court-appointed officer authority over hiring decisions and over investigations and does that to resolve federal civil rights issues, there's no authority to displace state law? In this case, the court was not acting to remedy federal civil rights violations. And that's a point that was misunderstood by the district court in this case. The NSA, if you go back, the city still to this day denies the allegations of the Allen plaintiff's claims. The Allen plaintiff's claims were never adjudicated. I don't understand what you're saying. They entered into an agreement, didn't they? Yes, they did. A settlement agreement, yes. A sovereign agreement before a federal judge. And now you're saying that from this day on, the Civil War continues? What is continue? What changes?  And it has the power to delegate certain powers from the chief of justice to the person who's going to be supervising the city following what the city said it should say. I'm missing your point. Because the legal force and effect of that district court order is only as good as the party's ability to consent to its terms. That's from the Local 93 case of the U.S. Supreme Court. And the city does not have the ability to consent to terms which violate its charter. Your point is that there's no way that the city could agree that its employee, the chief justice, the chief judge, is going to be limited. There's no way legally they can do that. They can't change his duties, nothing. Correct? Once the city's charter identifies a charter officer and prescribes duties to that charter officer, the city cannot relieve that charter officer of those duties. And that's the Scott v. Common Council case from state law, the state appellate court case. The state of California? State of California. And it's state law that governs appellant's claims in this case. So to take a step back and look at the overall oversight scheme that the Oakland's residents put in, the Oakland's residents instituted an oversight mechanism over their police department pursuant to their constitutional authority to order their municipal affairs. The primary reason or the primary purpose of that police oversight mechanism was to instill confidence in the police department. The primary way that objective was achieved was to identify the chief of police as a charter officer with charter prescribed duties to implement discipline. That discipline would be checked, for lack of a better term, by a separate and independent investigation of the CPRA. The city's voters did not institute a police oversight mechanism to provide public oversight over the compliance director's disciplinary authority. And that is in effect what happens as a result of the district court's order. District court's order completely undermines and frustrates the city's intent in identifying the chief of police as a police official accountable to the city's residents and whose disciplinary decisions are provided oversight. If the compliance director may step in at the compliance director's sole intent is frustrated. This leads to a second point, and we've already touched on this, but I think I should touch on it again. The district court was not reviewing this charter provision for an alleged unconstitutionality. It was not exercising remedial authority. Pursuant to a consent decree, the district court's role is to administer and enforce the consented terms, the contract between the parties to that consent decree. The city cannot agree to a term which allows it to circumvent its local constitution. That doesn't work at any level of government. The city's charter is the city's foundational operational document. It can't agree to violate that document. And I'll reserve the balance of my time for rebuttal. All right. Thank you, counsel. We'll hear now from Ms. Rocanova. Good morning. May I please the court? Gina Rocanova of Jackson Lewis on behalf of the city of Oakland and its police commission. Beginning as well with the particular question that the panel posed as far as the impact of the police commission's May 9 decision to reject the CPRA's order on this case, I absolutely agree with Mr. Lopes. It has no effect whatsoever. It was a essentially the essence of it was a concern with the investigatory process, not the findings. What was before the commission was simply the the procedural issue. And what the commission did did not have any impact on the case, which you can see from the disciplinary committee's report itself in which it considered the in the same form as it was submitted previously or considered previously by the commission. So do you agree that for purposes of fair analysis, we should treat the CPRA report as still in effect despite that the passage of that motion? Yes, Your Honor. The city does. That is the case because and that created the conflict that the discipline committee had to resolve. The CPRA committee, the CPRA findings were that there were no violations or lesser violations. The compliance director had said, yes, there were. That was what the disciplinary committee had to resolve. And under section 604 of the city charter, the disciplinary committee is vested with that authority. Unless there are further questions on the May 9 decision, I will then turn to both of my argument and respond to appellants, if that is OK for the panel. So what is what is missing? One very important point that is missing from the appellant's argument is that there is no conflict between the consent decree and its orders enforcing it and the charter. The voters did not intend by measure LL to somehow supersede or negate the terms of the NSA or the court's orders. And you can tell that by looking at section 604B5, which is found at page 524 of the excerpt of record, which explicitly vests the commission with overseeing the city's compliance with those orders for as long as they are in effect. So you have there an express intent by the voters to incorporate these orders for as long as they are in effect. That alone should end the analysis right there. Even if there were a conflict, the city would still have to follow the court's orders, of course. And we all know that anti-discrimination laws do preempt or limit the city's power under its charter, as do many other laws, including the Myers-Brown Act, which requires the city to meet and confer with the unions. What's your response to his argument about the Local 93 case? The Local 93 case does not stand for anything other than the fact that litigants have a broader ability to fashion remedial measures for alleged violations of the anti-discrimination statutes. That's all that case stands for. So it's really an opposite to this case. So the fact that the city has to has to follow the orders of a court implementing a consent decree, including the authority of a compliance director, is not a new idea. Consent decrees happen all the time. Compliance directors are appointed, monitors are appointed by court. And especially when you consider that the court was considering a far more drastic alternative, which was receivership, which would have completely taken over the mechanism of discipline, taken it away from the city's mechanisms and procedures. This this was a far less drastic alternative. It's also important to note that Section 604 places the ultimate discretion over discipline in the hands of the disciplinary committee. And that is what happens in this case. The order of events was the chief reviewed the internal procedures, issued findings. In February of 2019, some eight days later, the compliance director issued his findings. In April, the CPRA issued its report and the disciplinary convened in June 2019. That is exactly the order of events and the order of process that Section 604 dictates. 604 says the disciplinary committee gets the last word. They did have the last word. There's no conflict here. And with that, unless the panel has any further questions, I will submit. All right. Thank you, counsel. Thank you, Mr. Lopes. You have just about three, three and a half minutes for rebuttal. Thank you, Your Honor. The U.S. Supreme Court in Local 93 stated, quote, the party's agreement serves as the source of the district court's authority to enter any judgment at all in a consent decree case. That is directly relevant to this case because as stated before, the city does not have the ability to consent to terms which violate its charter, and that's the underlying legal force of the December, 2012 order. Now, appellant's claims are, must be reviewed under state law. That's this circuit's Collins case acknowledges that. Pursuant to state law, the city's charter is its local constitution. The state constitution states that the city's charter, the terms of a city's charter have the force and effect of state legislative enactments, and the Supreme Court has made clear that the terms of the charter may only be superseded by conflicting constitutional provisions or preemptive state law. The sources of law that Ms. Rocanova just discussed, the Myers-Millis-Brown Act, et cetera, those are preemptive or sources of preemptive state law, so the charter can't supersede those, but the charter certainly supersedes an agreement, and that's the underlying basis of the December, 2012 order. I think the last thing I'd like to point out is the fact that the city's voters have a constitutional right to order their municipal affairs, and the effect of the district court's order is to suspend certain portions of the charter so long as the NSA is ongoing. The district court does not have that authority. That's a violation of the separation of powers doctrine. The district court was not reviewing the charter for alleged constitutionality, and it was not issuing its, or is not acting pursuant to its remedial authority. Its authority was limited in this consent decree to administering and making sure the agreement between the parties is being adhered to. The NSA itself, the original founding document of this consent decree, acknowledges that the city's obligations of state law supersede the terms of the consent decree itself. With that, I'll rest. All right. Thank you, counsel. The case just argued will be submitted. Thank you. And to my colleagues, everyone is now checked in, so if we can take a break or we can proceed with the next case if you'd like. I'm fine. What's going on? Okay. All right. So, me too. Okay. Let's proceed. Judges, one moment. I have a Stanley Goff attorney in the waiting room who is claiming he's on the list for this case. I haven't been able to reach the Bonnie Cates to ask that. Is anybody there know whether he's actually on the list here? Which is his co-counsel. This is for the Ammons case? Okay. All right. Why don't we take a break while we sort out this issue? So, the court will stand in recess for five minutes. The court stands in recess.
judges: Wallace, Rakoff, Collins